IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MARGARET ALEXANDER                                           PLAINTIFF

v.                                    CIVIL ACTION NO. 1:11-CV-00256-GHD-DAS

MEDPOINT PROFESSIONAL STAFFING, LLC                          DEFENDANT

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant's motion for summary judgment [45]. Upon due consideration, the Court finds that the motion should be granted in part and denied in part.

### A. Background

Plaintiff Margaret Alexander ("Plaintiff") brings this suit against her former employer, MedPoint Professional Staffing, LLC ("Defendant"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The following facts apparently are not in dispute: Plaintiff is an African-American female. Defendant initially hired Plaintiff as a customer service representative and subsequently transferred Plaintiff to a warehouse position. Plaintiff filed an EEOC charge for race discrimination based on Defendant's alleged failure to promote her to a managerial position. Plaintiff received her right to sue letter on this charge. Plaintiff requested leave. Plaintiff's leave request was denied. Plaintiff took unauthorized leave. Upon Plaintiff's return to work, she was discharged from her employment. Plaintiff filed an EEOC charge for retaliation and received her right to sue letter on this charge. This suit followed.

1

## B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.

App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### C. Analysis and Discussion

Defendant argues that summary judgment should be granted on Plaintiff's race discrimination and retaliation claims under Section 1981 and Title VII.[1] Section 1981, known as the "equal contracts rights" provision, was enacted shortly after the Civil War and provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Title VII, unlike Section 1981, is a detailed statutory scheme that "enumerates specific unlawful employment practices" and "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers," including race-based discrimination by employers (§ 2000e-2) and retaliation for the employee's making or supporting a complaint about unlawful employment actions (§ 2000e-3)(a)). *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ____ U.S. _____, 133 S. Ct. 2517, 2522, 2530 (June 25, 2013). "Title VII is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *Id.* at 2522. The United States Supreme Court has recognized a "necessary overlap" between Section 1981 and Title VII, holding that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455, 128 S. Ct.

---

[1] Defendant also requests summary judgment on mental anxiety and punitive damages. Plaintiff maintains that she has not made separate claims for these. The Court agrees.

1951, 170 L. Ed. 2d 864 (2008) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)). Section 1981 encompasses retaliation claims. *See id.* at 457, 128 S. Ct. 1951.

Where a race discrimination or retaliation claim is based on circumstantial evidence, as Plaintiff's race discrimination and retaliation claims are here, the *McDonnell Douglas* burden-shifting framework is used. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). First, Plaintiff must establish a prima facie case of discrimination or retaliation. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000) (citations omitted)). If Plaintiff has done so, Defendant bears the burden of setting forth a legitimate, non-discriminatory or non-retaliatory reason for its decision. *Id.* If Defendant does so, the presumption of discrimination or retaliation disappears, and Plaintiff must demonstrate a genuine dispute of material fact as to whether Defendant's reasons are not the true reasons but are instead a pretext for discrimination or retaliation. *Id.* (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).[2] Based on the foregoing standard, the Court turns to the merits of first the race discrimination claims and then the retaliation claim.

---

[2] The Court notes that in the Fifth Circuit the mixed-motive framework has not yet been extended to Section 1981 claims, and it is unclear how far the United States Supreme Court's holding in *Gross v. FBL Financial Services, Inc.* has scaled back the extension of the mixed-motive application. *See generally Gross*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009); *see also Crouch v. JC Penney Corp.*, 337 F. App'x 399, 402, n.1 (2009) (finding that *Gross* "raises the question of whether the mixed-motive framework is available to plaintiffs alleging discrimination outside of the Title VII framework"). The mixed-motive framework's applicability is further called into question by the decisions of other circuits that had previously addressed the question and found it inapposite in Section 1981 claims even prior to the Supreme Court's holding in *Gross*. *See Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357, 1357 (11th Cir. 1999) (comparing the language of both statutes and determining an extension of the mixed-motive framework to Section 1981 claim would be inappropriate); *Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 676 (6th Cir. 2005) ("Congress inserted the specific statutory provision [supporting the mixed-motive framework] only into Title VII . . . it did not amend [Section] 1981 in an analogous fashion").

### *1. Race Discrimination Claims*

#### *a. Prima Facie Case of Race Discrimination*

Plaintiff claims she was discriminated against on the basis of her race by not being promoted to the position of manager or assistant manager and by subsequently being terminated from her employment. To sustain her race discrimination claim based on failure to promote, Plaintiff must first establish a prima facie case by showing that (1) she was not promoted; (2) she was qualified for the position she sought; (3) she fell within a protected class at the time of the failure to promote; and (4) Defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote Plaintiff because of her race. *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). Similarly, to sustain her race discrimination claim based on wrongful termination, Plaintiff must first establish a prima facie case by showing that (1) she is a member of a protected class; (2) she was qualified for the position she held prior to her termination; (3) she was terminated from that position; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably than she. *Simmons-Myers v. Caesars Entm't Corp.*, No. 12–60592, 2013 WL 697226, at *4 (5th Cir. Feb. 26, 2013) (per curiam) (citing *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011)). The plaintiff "need only make a very minimal showing" to establish a prima facie case. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

Plaintiff has met her prima facie burden on her failure to promote claim, as (1) it is undisputed that Plaintiff was not promoted to a managerial position; (2) Plaintiff has satisfied the

5

"very minimal showing" required to satisfy the qualified prong by alleging that a series of conversations between Plaintiff and the owner constituted an understanding between the two that Plaintiff had applied for the assistant manager and manager positions, that Plaintiff was qualified by her work experience and had consistently performed the manager's functions, and that there was no logical person to fill these positions other than herself;[3] (3) it is undisputed that Plaintiff is a member of a protected class; and (4) it is undisputed Defendant gave the managerial position to a Caucasian male, Chris Perry, a person outside Plaintiff's protected class.

Plaintiff has also met her prima facie burden on her wrongful termination claim: (1) as stated, Plaintiff is a member of a protected class; (2) Plaintiff has satisfied the "very minimal showing" required by presenting evidence that she was qualified for the position she held; (3) it is undisputed that Plaintiff was terminated from her employment; and (4) she has satisfied the "very minimal showing" by presenting evidence that others similarly situated were treated more favorably than she.

Thus, Plaintiff has met her initial burden on both her failure to promote claim and her wrongful termination claim, and in so doing, has raised an inference of intentional discrimination which Defendant must rebut by providing a legitimate and non-discriminatory justification for the adverse employment actions. *See Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995).

### b. *Legitimate, Non-discriminatory Reasons for Adverse Employment Actions*

The Court now turns to examine whether Defendant has articulated a legitimate justification for the alleged adverse employment actions of not promoting her to a managerial

---

[3] *See, e.g.*, Pl.'s E-mail to Phillip Minga [45-8] ("I'm contacting you today in regards to our meeting earlier this month about the manager position in the warehouse. In this meeting you stated the position was up for grabs between myself and Chris [Perry]. Now that he has given his notice, his last day being tomorrow, I have yet to [hear] from either you or Lee [Stallings] regarding the manager position. Please advise[.]").

position and for terminating her employment. Defendant contends that its legitimate, non-discriminatory reasons for denying promotion were (1) concerns about Plaintiff's job performance and (2) Plaintiff's failure to actually submit an application for any managerial position. Defendant further contends that its legitimate, non-discriminatory reason for terminating Plaintiff's employment was Plaintiff's act of taking unauthorized leave.

These justifications are sufficient to rebut Plaintiff's case on a prima facie level. Thus, the burden shifts back to Plaintiff to show pretext or mixed motives.

### c. *Pretext/Mixed Motives Alternative*

Plaintiff argues that the Defendant's decisions not to promote her to a managerial position and to terminate her employment were pretext for race discrimination. To satisfy pretext, Plaintiff must show either that (1) Defendant's proffered explanation was false or unworthy of credence or (2) Plaintiff was clearly better qualified than the applicant chosen for the promotion. *See Burrell v. Dr Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (internal quotation marks and citation omitted). A plaintiff bringing a race discrimination claim

> need not show that the causal link between injury and wrong is so
> close that the injury would not have occurred but for the act. . . .
> It suffices instead to show that the motive to discriminate was one
> of the employer's motives, even if the employer also had other,
> lawful motives that were causative in the employer's decision.

*Nassar*, 133 S. Ct. at 2522–2523 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

To show Defendant's proffered explanation for the decision not to promote was false or unworthy of credence, Plaintiff attempts to rely on her conclusory statements that she was the most qualified person to fill a managerial position and that Defendant disregarded this when it

decided not to promote her. To show that she was clearly more qualified and to raise a fact question as to whether race discrimination was a factor in Defendant's decision to hire someone else for the manager position, Plaintiff "must present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.' " *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (citation omitted). "Showing that two candidates are similarly qualified does not establish pretext." *Price*, 283 F.3d at 723. "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination." *Id.* "[B]etter education, work experience, and longer tenure with the company do not establish that [the plaintiff] is clearly better qualified." *Id.*

Plaintiff contends that (1) she had applied for a managerial position on several occasions; (2) the first disciplinary action Plaintiff ever received occurred approximately five weeks after she filed her EEOC race discrimination charge; and (3) deposition testimony shows that Plaintiff had consistent good performance at work and was capable to be manager. Plaintiff alleges that she was "by far, the best leading worker in the warehouse, and was well-qualified to be a warehouse manager or, at least, assistant manager," but that instead of promoting Plaintiff to the warehouse manager position, "Defendant hired two inexperienced white males, one as assistant manager and one as manager." Pl.'s Second Am. Compl. [14] ¶ 5. The record shows that Plaintiff and—according to her, her main contender for the manager job—Chris Perry had comparable qualifications and the decision of which to promote to manager was difficult. *See, e.g.*, Pl.'s E-mail to Phillip Minga, Defendant's Owner and Operator [45-8] ("I'm contacting you today in regards to our meeting earlier this month about the manager position in the warehouse.

8

In this meeting you stated the position was up for grabs between myself and Chris [Perry]. Now that he has given his notice, his last day being tomorrow, I have yet to [hear] from either you or Lee [Stallings] regarding the manager position. Please advise[.]"); Pl.'s Dep. [50-1] at 60 (Plaintiff referring to a perceived "toss[-]up between Chris Perry and myself" for the open manager position).

The Court finds that Plaintiff has failed to raise a genuine dispute of material fact that she was clearly better qualified. Any perceived disparities in qualification are not so great that no reasonable person could have chosen someone else to fill the managerial position. Further, a subjective decision making process does not raise inferences of discriminatory conduct. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988). Thus, the Court finds that Plaintiff has failed to satisfy pretext on her failure to promote claim based on race discrimination.

To show Defendant's proffered explanation for the decision to terminate her employment was false or unworthy of credence, Plaintiff argues that she had received consistently good job performance reviews and that her request for leave should have been granted, as all such requests had been granted in the past and that the proffered reasons for Plaintiff's termination were mere pretext for race discrimination. The Court finds that the record fails to highlight any genuine dispute of material fact with respect to pretext on Plaintiff's wrongful termination claim.

For all these reasons, Plaintiff has failed to establish pretext on her failure to promote and wrongful termination race discrimination claims. Plaintiff further argues that, assuming there is an indicia of reliability to Defendant's proffered reasons for not promoting Plaintiff to a managerial position and for subsequently terminating her employment, a reasonable jury could conclude that Plaintiff's race was a motivating factor for Defendant's decisions. The Court finds

9

that the record is bereft of evidence supporting that race was one of the motives Defendant had in not promoting Plaintiff and in subsequently terminating Plaintiff's employment. Accordingly, summary judgment is proper on Plaintiff's race discrimination claims for failure to promote and for wrongful termination.

## 2. Retaliation Claim

### a. Prima Facie Case of Retaliation

Plaintiff also claims that she was retaliated against because she filed an EEOC charge. Pl.'s Second Am. Compl. [14] ¶ 14. A plaintiff establishes a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir.) (internal citations omitted), *cert. denied*, 133 S. Ct. 136 (2012).

With respect to the first prong, it is undisputed that Plaintiff engaged in a protected activity by filing an EEOC charge for race discrimination. Thus, Plaintiff has satisfied the first prong of her prima facie retaliation case.

With respect to the second prong, it is undisputed that Plaintiff was given written warnings, denied leave, and terminated. Plaintiff maintains that all of these constitute adverse employment actions to satisfy the second prong. Under Title VII, an adverse employment action must be an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). Thus, the decisions to deny Plaintiff's leave request and to terminate her employment both constitute adverse employment actions under the second prong. However, Title VII does not cover "every decision made by employers that

arguably might have some tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999)). The written warnings administered to Plaintiff do not constitute materially adverse actions under Title VII, nor would they have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Simmons-Myers*, 2013 WL 697226, at *4 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (citation omitted)). The Court finds that Plaintiff has satisfied the second prong of her prima facie retaliation case by showing that she was denied leave and terminated from her employment.

With respect to the third prong, Plaintiff alleges that there is a causal link between the filing of Plaintiff's EEOC charge and her adverse employment action sufficient to satisfy her prima facie case. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). "However, we have made clear that 'the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case.' " *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (quoting *Swanson*, 110 F.3d at 1188 n.3). Indeed, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' " *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). "[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *See Evans v. City of Houston*, 246 F.3d

11

344, 354 (5th Cir. 2001) (emphasis added) (internal quotation marks omitted); *see also Cobb v. Singing River Health Sys.*, 503 F. App'x 290, 293 (5th Cir. 2012) (per curiam) (assuming that temporal proximity of one month between filing of race discrimination complaint and termination was sufficient to satisfy causation prong of prima facie case of retaliation).

In the case *sub judice*, there is sufficient evidence of a connection between Plaintiff's filing of her EEOC charge for race discrimination and the termination of her employment to establish the requisite causal link. Within two months of filing the EEOC charge, Plaintiff was written up and terminated from her employment. The two-month lapse in time likely is sufficient to establish causation. But even assuming *arguendo* it did not, Plaintiff offers other evidence of causation to satisfy her prima facie case, including that (1) Defendant had not disciplined or written up Plaintiff prior to her filing of the EEOC charge; and (2) Plaintiff had never before encountered a problem with taking leave whenever she so requested. Overall, Plaintiff has satisfied the causation prong, and has made out a prima facie case of retaliation.

For these reasons, Plaintiff has met her initial burden, and in so doing, has raised an inference of intentional discrimination which Defendant must rebut by providing a legitimate and non-retaliatory justification for the adverse actions of denying leave and terminating Plaintiff. *See Meinecke*, 66 F.3d at 83.

### b. *Legitimate, Non-retaliatory Reasons for Adverse Employment Actions*

The Court now turns to examine whether Defendant has articulated a legitimate, non-retaliatory reason for denying Plaintiff's leave request and terminating her employment, noting that the employer's burden is only one of production, not persuasion, and involves no credibility assessment. *See McCoy*, 492 F.3d at 557 (citation omitted). Defendant contends that Plaintiff's leave request was denied because she had no leave time available and the warehouse would be

12

understaffed in her absence. Defendant further contends that Plaintiff's employment was terminated because of job performance concerns and because she took the unauthorized leave.

These justifications are sufficient to rebut Plaintiff's case on a prima facie level. Thus, the Court now turns to see whether Plaintiff has satisfied pretext.

c.   Pretext

Because Defendant has articulated a legitimate, non-retaliatory reason for denying leave and terminating Plaintiff, the burden now shifts back to Plaintiff to show "that the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose." *Cobb*, 503 F. App'x at 293 (quoting *McCoy*, 492 F.3d at 557). The United States Supreme Court in a recent plurality decision clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the [motivating factor causation test]. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. at 2533. Thus, "a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534.[4]

An employee may establish pretext "directly, by showing a [retaliatory] reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable." *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). Alternatively, pretext may be established through evidence of disparate treatment. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

---

[4] Therefore, the Court does not address any mixed motives arguments pertaining to the retaliation claim.

Plaintiff argues that Defendant's proffered reasons for its adverse employment actions—that there were concerns with Plaintiff's job performance and that Plaintiff took unauthorized leave—were pretextual and that she was actually denied leave and terminated because she filed an EEOC charge. Plaintiff contends that the record shows that Plaintiff had consistently performed well at work—only receiving write-ups after it became known that she filed her EEOC charge—and that Defendant had been notified of Plaintiff's request for leave and had no objection to her doing so until after it was discovered that Plaintiff had filed an EEOC charge for race discrimination.

Plaintiff maintains that she had taken at least twenty days of approved leave between June 2010 and January 2011. Plaintiff argues that she notified Defendant in February of 2011 that she was taking leave in June of 2011, and that Defendant at that time "did not make any claim that it would be inappropriate for her to take this vacation"—thus, Plaintiff contends that "she believed that her[] then[-]supervisor, Chris [Perry], approved her vacation." Pl.'s Second Am. Compl. [14] ¶ 7. Plaintiff maintains that Defendant continued to express no objection to the leave request until May of 2011, after it became known that Plaintiff had filed an EEOC charge and approximately one month prior to the start of Plaintiff's requested leave. Plaintiff further maintains that at that point, Cheryl Storey informed her that her vacation leave request had been denied, but that Storey did not make clear to her what the consequences would be if she took the unauthorized leave. Pl.'s Dep. [50-1] at 79–80, 82. Storey testifies in contrast that she informed Plaintiff at the time that if she took the leave her job would be in jeopardy and that Plaintiff had already taken one week of leave time earlier that year and the warehouse would be understaffed without her there. Storey Dep. [50-6] at 25–26. However, Plaintiff testified that she had removed all her personal belongings from the workplace prior to taking her vacation, because

she "had known the way that Phillip [Minga] and [Defendant] had fired or terminated other people. You know, not a straight answer, no reason. Just like here, you're gone." *Id.* at 85–86. Plaintiff's testimony indicates that she suspected she would be fired if she took the leave after the request had been denied. Plaintiff testified that she decided to take the unauthorized leave because she had already purchased her airline tickets for her vacation and because she had ensured that the warehouse would be sufficiently staffed in her absence. *See* Pl.'s Dep. [50-1] at 59. Plaintiff contends that Defendant's reaction to her leave request was solely due to her filing of the EEOC charge and that but for the EEOC filing, Plaintiff's leave request would have been granted and she subsequently would not have been terminated. Plaintiff argues that Defendant had displayed a pattern of retaliating against employees who had, in the opinion of Defendant, filed false charges against it. Overall, Plaintiff argues that a reasonable jury could conclude that the sole reason Plaintiff was denied leave and was terminated is that Plaintiff filed an EEOC charge—that but for the filing of the EEOC charge, Plaintiff would not have been denied leave and terminated from her employment.

Defendant maintains that Plaintiff's request for leave was considered and denied because she had taken many days of leave already that year and because due to an increased workload the warehouse would have been understaffed in her absence.

The Court finds that Plaintiff has raised a genuine dispute of material fact that Defendant's reasons for denying leave and terminating her employment were pretextual. Accordingly, the Court finds that summary judgment should be denied as to Plaintiff's retaliation claim.

*D. Conclusion*

In sum, the Court finds that the Defendant's motion for summary judgment [45] should be GRANTED as to Plaintiff's race discrimination claims and DENIED as to Plaintiff's retaliation claim. The retaliation claim shall proceed to trial.

A separate order in accordance with this opinion shall issue this day.

THIS, the 22nd day of July, 2013.

_____

SENIOR JUDGE

16